Bajandas Vélez, Jueza Ponente
*746 TEXTO COMPLETO DE LA SENTENCIA
La Sra. Liana Caro Ortiz nos solicita la revocación de la sentencia dictada por el Tribunal de Primera Instancia, Sala Superior de San Juan (el TPI), el 3 de julio de 2002 y notificada el 16 de julio de 2002. En la misma, el TPI declaró con lugar la moción de desestimación contra la prueba presentada por la parte demandada, desestimó la demanda y le impuso a la demandante el pago de $1,000.00 por concepto de costas, gastos, y honorarios de abogado.
Analizados cuidadosamente el expediente y la transcripción de la vista, así como el derecho aplicable, resolvemos revocar la sentencia apelada y devolver el caso al TPI para la continuación de los procedimientos.
I
El 30 de septiembre de 1997, la Sra. Liana Caro Ortiz entabló demanda contra el Sr. Rubén Acevedo, propietario de H.R. Food and Liquor Market (Acevedo). Alegó que, mientras se desempeñaba como cajera en el negocio de éste último, fue objeto de avances sexuales por parte de Acevedo. Sostuvo que el 10 de mayo de 1994 fue despedida de forma injustificada, debido a que no accedió a los reclamos sexuales del patrono. Adujo además que su patrono creó un ambiente hostil y/o le condicionó su empleo a ciertos actos y avances sexuales. La demandante solicitó, entre otros remedios, la suma de $500,000.00 por angustias mentales, una suma adicional no menor de $50,000.00 por concepto de mesada y gastos incidentales por la cantidad de $10,000.00. El padre de la Sra. Caro, el codemandante Sr. Antonio Caro Díaz, reclamó la suma de $200,000.00 dólares por concepto de sufrimientos y angustias mentales. Apéndice de la Apelante, págs. 1-4.
El 30 de octubre de 1997, Acevedo presentó su contestación a la demanda, en la cual negó la mayoría de las alegaciones. Adujo como defensa afirmativa, entre otras, que la demandante había abandonado su empleo de forma voluntaria luego de que se le llamara la atención por sus tardanzas excesivas. Apéndice de la Apelante, págs. 5-6.
Luego de varios incidentes procesales, la Sra. Caro solicitó al TPI que emitiera una orden dirigida al Departamento del Trabajo, Unidad Antidiscrimen, para que le suministrara el expediente completo de ésta en dicha agencia, identificado con el número UAD 940252a. No obstante, según surge posteriormente de la Minuta de 12 de enero de 2000 sobre la Conferencia con Antelación al Juicio, el TPI estimó que “el expediente de la UAD 94-0252, es inadmisible, porque no son procedimientos judiciales de carácter adjudicativo, sino procedimientos administrativos de naturaleza conciliatoria”. A pesar de ello, la querella presentada en dicha unidad fue posteriormente admitida en la vista en su fondo como el Exhibit Conjunto núm. 2. 
Además, surgió de dicha Minuta que el TPI específicamente dispuso que “[e]n cuanto a las tarjetas de ponchar, la orden permanente de conferencia con antelación al juicio es clara, por lo que los abogados deberán *747 hacer un análisis de dicha prueba, y someterán mediante estipulación de las partes la información o data que surja, o deje de reflejarse en dichas tarjetas de ponchar. De esta manera se sustituirá esta prueba documental por dicha estipulación sobre su contenido”. Autos Originales, Minuta de 12 de enero de 2000.
El 4 de enero de 2000, las partes finalmente sometieron el Informe de Conferencia con Antelación al Juicio. En dicho informe, la parte demandada enmendó sus alegaciones a los efectos de exponer que cualquier reclamación por concepto de salarios entre las partes había sido dirimida y resuelta en un pleito anterior, cuya sentencia se notificó el 24 de diciembre de 1998. Esbozada la teoría legal de cada una de las partes, estipularon, entre otros, los siguientes hechos:

“(1) Durante enero a mayo de 1994, el Sr. Rubén Acevedo era el dueño de H.R. Food Liquor Market.

(2) La demandante fue empleada en enero de 1994, como cajera, devengando un salario de $4.25 la hora y trabajó para el demandado hasta el 10 de mayo de 1994.

(3) La demandante ponchaba tarjetas al entrar y salir del trabajo.

(4) Durante los meses que Liana Caro trabajó con la parte demandada, era la única fémina empleada en el establecimiento.

(5) El Sr. Rubén Acevedo era el supervisor de ésta, al igual que de todos los demás empleados del negocio. ” 

Asimismo, el Informe enumeró las controversias del caso según cada una de las partes. La parte demandante indicó como aspectos controvertidos los siguientes: (1) el hostigamiento sexual y los daños reclamados, y (2) el despido injustificado de la demandante el 10 de mayo de 1994 y las horas extras adeudadas. Por otro lado, la parte demandada adujo que el TPI debía de determinar, a la luz de la prueba presentada: (1) si la demandante fue realmente hostigada en su empleo o si todas las alegaciones surgen como el resultado vengativo por la amonestación a la que fue objeto por sus tardanzas en el trabajo, (2) si fue despedida del empleo o si hubo abandono del mismo, y (3) si la parte demandada causó daños a la demandante.
Finalmente, el Informe incluyó una lista de la prueba testifical a ser desfilada durante el juicio. La parte demandante ofrecería su propio testimonio y el de su padre, el Sr. Caro Díaz, mientras que la parte demandada, en adición al testimonio del demandado Sr. Acevedo, sentaría a declarar los siguientes testigos: 

“Gisela Sánchez: testificará sobre su relación con la demandante mientras fue empleada.

Angel Ruiz: testificará sobre su relación con la demandante, mientras fue empleada.

Heriberto Brillón Martínez: testificará sobre la demandante mientras ésta se desempeñó en el establecimiento del demandado.

Milagros Pichardo: testificará sobre su desempeño de trabajo para el demandado.

Vanesa Vizcarrondo: testificará sobre su desempeño de trabajo para el demandado.

Muibet A. Morales: testificará sobre su desempeño de trabajo para el demandado.

Normando Durán Lugo: testificará sobre sus experiencias como supervisor de la demandante.

*748
Custodio o administrador de expediente de personal de la demandante Liana Caro, en Metro Beepers, Inc. ” 

Tras varios incidentes procesales que resultan innecesarios describir, el 21 de marzo de 2000, la parte demandada presentó moción en la que expresó que le informó a la parte demandante las alegadas tardanzas de ésta a su trabajo. Con el propósito de estipular el asunto, a tenor con la previa orden del TPI, solicitó la verificación de las tarjetas de ponchar que la demandante tenía en su posesión debido a que, según el demandado, ello no había sido realizado. Así las cosas, el 29 de agosto de 2000, dicha parte volvió a presentar una Moción para Aclarar y Suplementar Estipulación de lo que Surge de las Tarjetas de Ponchar de la Demandante. Tal actuación fue motivada porque la parte demandante unilateralmente había presentado un escrito titulado Estipulación de lo que surge de las Tarjetas de Ponchar. En vista de ello, la parte demandada enumeró, según su criterio, las diferencias surgidas en las tarjetas de ponchar contenidas en el informe de la demandante. Ante tal discrepancia entre las partes, el TPI resolvió durante la vista en su fondo adoptar la estipulación informada por la parte demandada, descartando la de la Sra. Caro. 
Posteriormente, el 6 de septiembre de 2000 se celebró la vista en su fondo. En horas de la mañana prestó testimonio únicamente la demandante. En resumen, la Sra. Caro declaró que fue objeto de hostigamiento sexual por parte del Sr. Acevedo; que a la hora del cuadre, el Sr. Acevedo rozaba su parte frontal inferior con la suya trasera; que la invitaba a pasear en su bote; le preguntaba sobre las intimidades con su novio; y le rozaba las piernas cuando buscaba cosas debajo del mostrador. Transcripción, págs. 24-25.
En cuanto al alegado despido, la demandante testificó que el 10 de mayo de 1994 fue despedida al entregársele una carta en la cual se le amonestaba por llegar tarde, la cual no quiso firmar; que el Sr. Acevedo le comunicó que la iba a despedir, ponchándole la tarjeta de asistencia y diciéndole que se fuera; que al día siguiente visitó el establecimiento para buscar una carta de despido, la cual el Sr. Acevedo le negó. Transcripción, págs. 29-30. No obstante, la Sra. Caro admitió que, en ocasiones, llegaba dos o tres minutos tarde a su trabajo y que sus tardanzas provocaban un problema. Transcripción, pág. 106.
Concluido el testimonio de la Sra. Caro, el TPI inquirió sobre el restante testigo de la parte demandante, el Sr. Antonio Caro. Intimó que éste declararía sobre el aspecto de los daños, por lo que manifestó que resultaba prematuro su testimonio. Transcripción, pág. 138. Añadió que: “Hasta que no se establezca una responsabilidad, cualquier tipo de alegación de daño, es totalmente prematura y además de que, de no establecerse esa alegación, no procede ningún tipo de alegación subsiguiente...”. Transcripción, pág. 139. El abogado de la demandante objetó dicha determinación y adujo que había “pruebas específicamente producidas por el compañero, de que el señor estuvo presente en el local y yo no quisiera cerrar las puertas diciendo que él no puede testificar aquí. ” Transcripción, pág. 139, líneas 16 a 18. Finalmente, el TPI concluyó que el testimonio del Sr. Antonio Caro sería contingente a la determinación de responsabilidad.
Acto seguido, la parte demandada solicitó la desestimación de la demanda a tenor con la Regla 39.2 (c) de las Reglas de Procedimiento Civil. Por su parte, la demandante argüyó que dicha moción resultaba prematura, ya que su caso no había quedado sometido todavía. Transcripción, pág. 140. Luego de argumentado este extremo, el TPI determinó que el caso de la demandante sí había quedado sometido en cuanto al aspecto de responsabilidad. Transcripción, pág. 143. No obstante, acto seguido, el TPI estimó necesario escuchar el testimonio del Sr. Acevedo durante las horas de la tarde en cuanto a los Exhibits Conjuntos Núm. 1 y 2 y el Exh. 3 de la parte demandada. Véase Apéndice de la Apelante, pág. 23, Sentencia, pág. 2.
A las dos de la tarde, el tribunal continuó con la vista en su fondo. Antes de comenzar el testimonio del Sr. Acevedo, la parte demandada solicitó nuevamente la desestimación del pleito de conformidad con la Regla 39.2 (c). El TPI se reafirmó en escuchar el testimonio del Sr. Acevedo en cuanto a la alegada carta de despido de 10 de mayo de 1994 y la querella presentada ante la Unidad Antidiscrimen del Departamento del Trabajo.
*749 Así, el Sr. Acevedo declaró, en esencia, que la carta del 10 de mayo de 1994 suscrita por él tuvo el propósito de corregir las tardanzas de la demandante, y que no tuvo el propósito de despedirla del empleo. Transcripción, págs. 159-60. Se expresó, además, sobre las alegadas tardanzas de la Sra. Caro. Transcripción, pág. 165.
Con respecto a ciertos incidentes que acontecieron en su establecimiento entre la Sra. Caro y otros empleados del local, el Sr. Acevedo declaró que la demandante se había quejado del Sr. Angel Ruiz, por éste alegadamente haberle dicho cosas de “salami duro o blandito” cuando ésta le pidió que le preparara un “sándwich”, (Transcripción, pág. 171, línea 8); que la Sra. Caro acusó al Sr. Heriberto Brillón de tocarla, (Transcripción, pág. 172); que siempre tenía quejas de la Sra. Caro, (Id.); que hubo un incidente de una pelea entre un amigo suyo y el novio de la Sra. Caro, a quien el Sr. Acevedo tuvo que encerrar dentro de la tienda, a raíz de que la Sra. Caro se quejara de que el amigo del Sr. Acevedo “la. desvistió con los ojos”. (Id.) Con estas declaraciones concluyó la vista en su fondo.
Posteriormente, el 3 de julio de 2002, archivada en autos el 16 de julio de 2002, el TPI emitió su sentencia. En la misma, declaró ha lugar la moción de desestimación del demandado. Expuso que “Este tribunal, luego de haber aquilatado el testimonio de los testigos y la prueba documental ofrecida en evidencia, establece que el testimonio de la demandante Liana Caro Ortiz, no nos mereció ninguna credibilidad por haber sido uno ilógico, incongruente e inconsistente.” Apéndice de la Apelante, pág. 23. Determinó como hechos probados los siguientes:

“(1) Que el Sr. Rubén Acevedo adquirió el negocio H.R. Food Liquor Market, desde el 1 de septiembre de 1989.

(2) Que la demandante Liana Caro Ortiz comenzó a trabajar para la demandada H.R. Food Liquor Market, el 4 de enero de 1994, en capacidad de cajera, hasta el 10 de mayo de 1994.

(3) Que el horario de trabajo de la demandante Liana Caro Ortiz con la demandada H.R. Food Liquor Market, era de 8:00 a.m. a 3:30p.m., o de 3:30p.m. a 11:00p.m., dependiendo del turno de trabajo.

(4) Que la presencia de la cajera al comienzo de su turno de trabajo era necesario [sic] por haber una sola persona responsable de dicha función en cada turno.

(5) Que el señor Rubén Acevedo, en una ocasión tuvo que intervenir con uno de sus empleados, Julio E. Robles Rivera, porque la demandante Liana Caro Ortiz, se había quejado ante éste de que dicho empleado le [sic] había tocado. Luego de la investigación, resultó que fue un malentendido de la demandante Liana Caro Ortiz.

(6) Que en otra ocasión, la demandante Liana Caro Ortiz, se quejó con el señor Rubén Acevedo, de que otro empleado, el señor Heriberto Brillón, cuando buscaba unos papeles en el área de la caja, le había rozado el pantalón.

(7) Que la demandante, Liana Caro Ortiz, en otra ocasión se volvió a quejar al señor Rubén Acevedo, de que otro empleado, el señor Angel Ruiz, al prepararle un “sándwich a esta [sic], le había preguntado si quería el salami duro o blandito, por lo que ella se había sentido ofendida.

(8) Que el señor Rubén Acevedo, también tuvo que intervenir en una pelea entre el novio de la demandante Liana Caro Ortiz y un cliente y amigo del señor Rubén Acevedo, porque esta [sic] le dijo a su novio que dicha persona la estaba desvistiendo con la vista.

(9) Que la demandante Liana Caro Ortiz fue amonestada en varias ocasiones verbalmente por sus continuas tardanzas al trabajo.

*750
(10) Que el día 10 de mayo de 1994, se le dio un memorando por escrito advirtiéndole que de esta [sic] continuar con sus tardanzas, sería suspendida de empleo por una semana y que de esto continuar entonces sería cesanteada.

(11) Que al dársele el memorando el 10 de mayo de 1994, se le requirió a esta [sic] que no podía tocar la caja hasta que firmara el mismo, a lo que se negó. Luego de un rato, esta [sic] abandonó los predios de H.R. Food Liquor Market, llevándose consigo el memorando.

(12) Que al otro día, el 11 de mayo de 1994, la demandante Liana Caro Ortiz se presentó en H.R. Food Market, exigiendo una carta de despido.

(13) Que el señor Rubén Acevedo, le negó dicha carta porque esta no había sido despedida. La demandante Liana Caro Ortiz, volvió a abandonar los predios de H.R. Food Market.

(14) Que posteriormente, el señor Rubén Acevedo se enteró que esta [sic] había radicado una querella ante la Unidad Antidiscrimen, alegando que había sido despedida de su empleo por tardanzas al rechazar ciertos acercamientos sexuales del señor Rubén Acevedo.

(15) Que la demandante también trabajó en J.F. Montalvo Inc., y allí también reclamó que había sido objeto de hostigamiento sexual.

(16) Que para el 1996, mientras la demandante Liana Caro Ortiz, trabajaba para la compañía Metro Beeper, también reclamó que su supervisor le estaba haciendo acercamientos sexuales.

(17) Que la demandante Liana Caro Ortiz, observaba un patrón de alegaciones de supuestos hostigamientos sexuales. ”

Acorde con las anteriores determinaciones de hechos, el TPI concluyó que la demandante no pudo probar a satisfacción del tribunal el hostigamiento sexual por parte del Sr. Acevedo. El tribunal estimó, además, que tampoco pudo probar que hubo efectivamente un despido por parte de este último. En razón de ello, desestimó la demanda. Apéndice de la Apelante, págs. 21-26.
El 19 de julio de 2002, la demandante solicitó al TPI determinaciones de hechos adicionales, a tenor con la Regla 43.3 de Procedimiento Civil y Reconsideración de la sentencia. Mediante orden de 5 de agosto de 2002, notificada el 7 de agosto de 2002, el TPI declaró dicha moción no ha lugar.
Inconforme, el 6 de septiembre de 2002, la Sra. Caro apeló ante nos, señalando la comisión de tres errores por parte del TPI, a saber:

“ERRO EL TRIBUNAL DE PRIMERA INSTANCIA AL DECLARAR CON LUGAR MOCION DE DESESTIMACION AL CONCLUIR LA PRUEBA DE LA DEMANDANTE, CONTRARIO A LOS CRITERIOS ESTABLECIDOS POR EL TRIBUNAL SUPREMO, CON REFERENCIA AL “NON-SUIT”.

ERRO EL TRIBUNAL DE INSTANCIA AL APLICAR EL DERECHO, PUES EL DEMANDADO NUNCA NEGO LOS HECHOS DE HOSTIGAMIENTO SEXUAL ESTABLECIDOS POR LA DEMANDANTE.

ERRO EL TRIBUNAL DE INSTANCIA AL APLICAR EL DERECHO, IGNORANDO LAS ESTIPULACIONES SOMETIDAS POR LAS PARTES.”

La parte apelada presentó su alegato en oposición a la apelación el 15 de octubre de 2002. Inicialmente *751 sostuvo que el primer error carece de fundamento y no se cometió por el TPI, toda vez que de la Minuta de la vista en su fondo surge claramente que el tribunal denegó la moción de desestimación conforme a la Regla 39.2 (c) de Procedimiento Civil a los fines de escuchar el testimonio del Sr. Acevedo. Apéndice del Apelado, págs. 1-4.
A su vez, respecto al segundo error, el demandado argumentó que corresponde al TPI aquilatar la pmeba testifical ofrecida, la cual, éste estimó, era insuficiente para establecer la causa de acción por hostigamiento sexual. Señaló, además, que la demandante no presentó prueba de corroboración, por lo que su testimonio, junto a la prueba documental, fue el único factor de credibilidad a ser examinado por el TPI. Alegato Suplementario del Demandado-Apelado, pág. 4.
Por último, el demandado cuestionó el tercer señalamiento de error, puesto que el TPI expresó en su sentencia haber aquilatado tanto la prueba documental como la testifical en el caso.
El mismo día de presentado el alegato de oposición a la apelación, el demandado presentó una moción en la cual cuestionó el cumplimiento de la parte apelante con la Regla 19 de nuestro Reglamento, sobre la presentación de una exposición narrativa dentro del término de treinta días.
Debido a la aparente inconsistencia entre el contenido de la Minuta del 6 de septiembre de 2000 y la sentencia emitida, el 22 de octubre de 2002 emitimos resolución requiriendo a la parte apelada expresarse sobre el último párrafo de la página 3 de la aludida Minuta y la página 2 de la sentencia. En relación con dicha Minuta, surge del expediente que el 9 de septiembre de 2000, el demandado había solicitado enmiendas al contenido de la misma. En particular, argumentó que la verdadera expresión del tribunal fue que éste se reservaba la determinación sobre la moción de desestimación acorde con la Regla 39.2(c) de Procedimiento Civil.
Por su parte, en cumplimiento con nuestra orden, la apelante sostuvo que la Minuta no reflejaba el proceder del TPI, sino que la realidad era lo consignado en la sentencia.
En vista de las posiciones encontradas de las partes, el 22 de noviembre de 2002 emitimos resolución ordenando una transcripción total de la prueba oral de los procedimientos acaecidos el 6 de septiembre de 2000. Posteriormente, el 22 de enero de 2003, el abogado de la parte demandada, Ledo. Arroyo Santiago, presentó ante nos Moción de Renuncia de Representación Legal, por alegadas diferencias irreconciliables con la parte demandada. El 23 de enero de 2003 emitimos resolución aprobando dicha renuncia y le otorgamos a su cliente un plazo de 20 días para contratar y anunciar un nuevo abogado. En dicha resolución, además, tomamos conocimiento de los trámites de la apelante para cumplir con la regrabación de los procedimientos.
El 7 de febrero de 2003, la apelante presentó la transcripción de los procedimientos y el 6 de marzo de 2003 emitimos resolución dando por perfeccionado el recurso presentado. El 18 de marzo de 2003 compareció la nueva representación legal del demandado, solicitando un término de treinta días para presentar cualquier gestión necesaria conforme al estado del caso. Al día siguiente, admitimos al Ledo. Iván A. Ramos en representación de la parte apelada, y le concedimos un plazo de 15 días para la presentación de un escrito suplementario al alegato del apelado que obra en el expediente. Conforme a dicha orden, la nueva representación legal de la parte apelada presentó su alegato suplementario el 9 de abril de 2003.
Así las cosas, el 14 de abril de 2003, le concedimos a la apelante 15 días para replicar a dicho escrito. Conforme a dicho dictamen, la apelante presentó el 14 de mayo de 2003 escrito titulado “Segundo Cumplimiento Específico”. En el mismo, sostuvo que no se había completado el desfile de toda su prueba, cuando el TPI decidió bifurcar el procedimiento a mitad del caso. Añadió que interrumpir el desfile de la prueba y escuchar un testigo contrario sobre ciertos exhibits antes de resolver la moción de desestimación a tenor con la Regla 39.2 (c) de Procedimiento Civil constituye una negación del debido proceso de ley a la apelante. Asimismo, argumentó que el *752 TPI debió de haber admitido la evidencia a la luz más favorable para la demandante al adjudicar dicha moción, toda vez que su caso no era uno claro de desestimación sumaria. Para apoyar dicha aseveración, la apelante adujo que el procedimiento ante la Unidad Anti-discrimen, cuyo expediente no se admitió en evidencia, determinó causa probable de discrimen en su caso. Además, alegó que la demandada no tenía una política establecida sobre hostigamiento sexual y no existía un reglamento sobre tardanzas en dicho negocio. Argumentó que, previo al incidente del alegado despido, la demandante no había recibido amonestación alguna o memorando estableciendo un desempeño negligente en su empleo. Finalmente, concluyó que la médula del caso reside en que el demandado no negó los actos de hostigamiento, y que la sentencia emitida no contiene fundamento alguno para concluir que el testimonio de la Sra. Caro fue uno inconsistente o ilógico.
Luego de estudiados detenida y cuidadosamente los autos originales, la transcripción de los procedimientos acaecidos el 6 de septiembre de 2000 y evaluados los alegatos de las partes, pasamos a resolver.
II
En nuestro ordenamiento existen múltiples expresiones estatutarias para hacer valer las garantías de nuestra Constitución contra el discrimen en el ámbito laboral. Una de éstas es la Ley General contra el Discrimen en el Empleo, Ley Núm. 100 de 30 de junio de 1959, según enmendada, 29 L.P.R.A. secs. 146 et seq. (Ley 100). La misma tiene una aplicación limitada a la empresa privada y a las instrumentalidades del E.L.A. que operen como negocios o empresas privadas. Huertas v. Cía Fomento Recreativo, 147 D.P.R. 12 (1998). Con el mismo propósito, se promulgó la Ley Núm. 69 de 6 julio de 1985, 29 L.P.R.A. sec. 1341 et seq., (Ley 69) para proscribir el discrimen por género por embarazo en el empleo o en la decisión de emplear. Por último, se encuentra la Ley Núm. 17 de 22 de abril de 1988, 29 L.P.R.A. secs. 155 et seq., que prohíbe tajantemente el hostigamiento sexual en el empleo, la cual fue originalmente establecida mediante jurisprudencia, debido a que las Leyes 100 y 69 no atendían expresamente el problema. Vélez v. Servicios Legales de Puerto Rico, Inc., 144 D.P.R. 1 (1998); Rodríguez Meléndez v. Supermercado Amigo, Inc., 126 D.P.R. 117 (1990). Analicemos, por tanto, la Ley 100 y la Ley 17, aplicables a la controversia de autos.
El Artículo 3 (see. 148) de la Ley 100 establece la importante presunción de despido discriminatorio, la cual entra en juego durante la etapa probatoria del caso, salvo que se demuestre que existió justa causa para el despido. Sin embargo, nuestro más alto foro ha enfatizado que el Art. 3 no altera en su totalidad nuestro esquema probatorio, a los efectos de que, una vez instada la acción judicial, de ordinario, le corresponde a la parte demandante comenzar la presentación de la prueba de sus alegaciones previo a que la parte demandada venga obligada a rebatirla.
Cuando la parte demandante no presenta prueba suficiente para sostener sus alegaciones, la parte demandada podrá solicitar la desestimación de la demanda en esta etapa, de conformidad con la Regla 39.2(c) de Procedimiento Civil, 32 L.P.R.A. Ap. IV, figura procesal que analizaremos más adelante. En Mirtha Hernández, Galo Beltrán y la Sociedad de Gananciales v. T.O.L.I.C., 2000 J.T.S. 125; 151 D.P.R. _ (2000), el Tribunal Supremo, aclarando el anterior concepto, precisó que “la presunción que allí se establece [Art.3] es facilitarle al empleado el probar su caso, no el relevarlo de la necesidad de presentar evidencia alguna para probar sus alegaciones”. Id., 2000 J.T.S. 125, a la pág. 1562.
El esquema probatorio para la presentación de la prueba en casos de discrimen es el siguiente: le corresponde inicialmente al empleado presentar prueba que sostenga sus alegaciones. En particular, deberá establecer que: (1) hubo un despido o acto perjudicial; (2) que éste se realizó sin justa causa; y (3) algún hecho base que lo ubique dentro de la modalidad de discrimen bajo la cual reclama. Belk v. Martínez, 146 D.P.R. 215 (1998). Cumplida esta fase inicial, surge la presunción de despido discriminatorio. Las circunstancias o hechos básicos varían según el contexto en que se de la decisión de empleo y el tipo de discrimen que se alegue. Díaz Fontánez v. Wyndham Hotel Corp., 2001 J.T.S. 146; 155 D.P.R. _ (2001).
*753 A partir de este momento, el onus probandi recae sobre el patrono, y de éste no presentar prueba alguna, sólo resta dar por probado el caso del empleado y adjudicar los daños. Sin embargo, existe la posibilidad de que el patrono opte por defenderse de varias formas: (1) presentando prueba para rebatir la presunción de despido discriminatorio, (2) o probando que hubo un despido justificado (justa causa); (3) probando que no hubo tal despido; o (4) a pesar de haber habido un despido injustificado, estableciendo que éste no fue discriminatorio. Mirtha Hernández, Galo Beltrán y la Sociedad de Gananciales v. T.O.L.I.C., supra; Alberty v. Rodríguez Ema, 99 J.T.S. 199; 149 D.P.R. _ (1999).
No obstante lo anterior, al empleado aún le asiste otra oportunidad para probar su caso, claro está, sin el beneficio de la presunción. Tendrá que ofrecer prueba específica de incidentes o hechos que demuestren dicho discrimen o de los cuales se pueda inferir el mismo. Id.
Por otro lado, resulta pertinente puntualizar que si bien la Ley 17 persigue los mismos propósitos que la Ley 100, la primera expresamente declara como política pública del E.L.A. que el hostigamiento sexual en el empleo es una forma de discrimen por razón de sexo y, como tal, constituye una práctica ilegal e indeseable que pugna con nuestro principio constitucional de que la dignidad del ser humano es inviolable. Véase Exposición de Motivos de la Ley 17, supra; Constitución del E.L.A., 1 L.P.R.A. Art. II, Sec. 8.
El Artículo 3 de la Ley 17, sec. 155b, establece que el hostigamiento sexual consiste en:

“Cualquier tipo de acercamiento sexual no deseado, requerimientos de favores sexuales y cualquier otra conducta verbal o física de naturaleza sexual, cuando se da una o más de las siguientes circunstancias:

(a) Cuando el someterse a dicha conducta se convierte de forma implícita o explícita en un término o condición del empleo de una persona.

(b) Cuando el sometimiento o rechazo de dicha conducta por parte de la persona se convierte en fundamento para la toma de decisiones en el empleo o respecto del empleo que afectan a esa persona.

(c) Cuando esa conducta tiene el efecto o propósito de interferir de manera irrazonable con el desempeño del trabajo de esa persona o cuando crea un ambiente de trabajo intimidante, hostil u ofensivo. ”

La normativa antes transcrita establece dos manifestaciones diferenciadas del hostigamiento sexual. Los primeros dos incisos establecen el hostigamiento, mejor conocido como quid pro quo, u hostigamiento de “algo a cambio de algo’’. El inciso (c) se refiere a la modalidad del hostigamiento por ambiente hostil. La creación de un ambiente hostil mediante hostigamiento sexual puede, por sí sola, servir de fundamento para una reclamación por discrimen por razón de sexo. Rodríguez Meléndez v. Supermercados Amigo, Inc., supra, pág. 128, citando a Henson v. City of Dundee, 682 F. 2d. 897 (11mo Cir.1982).
En el hostigamiento por ambiente hostil, existe una conducta de tipo sexual que interfiere irrazonablemente con el desempeño del empleado(a) o es lo suficientemente severa como para crear un ambiente intimidante y ofensivo. Para establecer un caso prima facie a tenor con esta modalidad, “basta con que el hostigamiento se dirija a la víctima únicamente por razón de su sexo; no es necesario que la conducta sea explícitamente sexual ni que le cause un menoscabo económico al empleado afectado. Más bien, lo determinante, para el éxito de una reclamación formulada al amparo de esta modalidad, es que la conducta hostigante —la cual, dicho sea de paso, no puede consistir de un incidente aislado — , haya causado tal grado de ansiedad y debilitamiento de la estima y confianza propias delfla] demandante que sus condiciones de empleo se hayan contaminado impermisiblemente.” (Citas omitidas). Arcadio Afanador Irizarry v. Roger Electric, 2002 J.T.S. 62, pág. 1023, 156 D.P.R. _ (2002); Véase además, In Re: Robles Sanabria, 2000 J.T.S. 106; 151 D.P.R. _ (2000). Así pues, el tribunal viene obligado a realizar un examen de la totalidad de las circunstancias dentro de las cuales *754 surge la reclamación por ambiente hostil, a los fines de determinar si la conducta alegada constituye hostigamiento sexual. Id.
Expuesto el derecho aplicable en cuanto a la causa de acción por hostigamiento sexual, procedemos a analizar la Regla 39.2 (c) de las Reglas de Procedimiento Civil, la cual reglamenta la moción de desestimación contra la prueba, también conocida como moción de “non-suit’. Dicha regla establece:

“Después que el demandante haya terminado la presentación de su prueba, el demandado, sin renunciar al derecho de ofrecer prueba en el caso de que la moción sea declarada sin lugar, podrá solicitar la desestimación, fundándose en que bajo los hechos hasta ese momento probados y la ley, el demandante no tiene derecho a la concesión de remedio alguno. El tribunal podrá entonces determinar los hechos y dictar sentencia contra el demandante, o podrá negarse a dictar sentencia hasta que toda la prueba haya sido presentada. A menos que el tribunal en su orden de desestimación lo disponga de otro modo, una desestimación bajo esta Regla 39.2 y cualquier otra desestimación, excepto la que se hubiere dictado por falta de jurisdicción, o por haber omitido acumular una parte indispensable, tienen el efecto de una adjudicación en los méritos. ”

La aludida regla aplica en limitadas circunstancias, cuando el demandante en el juicio ha terminado la presentación de su prueba y el demandado, sin renunciar al derecho de presentar prueba a su favor, solicita la desestimación por el fundamento de que a tenor con los hechos probados hasta ese momento y el derecho aplicable, el demandante no tiene remedio alguno a su favor.
Luego de solicitarse la desestimación de conformidad con la Regla 39.2(c) de Procedimiento Civil, el TPI tiene dos opciones para proceder. En primer lugar, podrá determinar los hechos y dictar sentencia contra el demandante. En segundo lugar, podrá denegar la moción o negarse a dictar sentencia hasta que toda la prueba haya sido presentada.
La Regla 41(b) del Código de Enjuiciamiento Civil, norma anterior análoga a la actual Regla 39.2(c), establecía que la moción de “non-suit” admitía toda la prueba presentada por el demandante en su parte más favorable a éste, y debía declararse sin lugar, de haber tan sólo una “scintilla” de prueba para sostener la causa de acción. Cuevas Segarra, José A. Tratado de Derecho Procesal Civil, Publicaciones J.T.S., Tomo II, pág. 648.
La regla actual que rige los procedimientos, sin embargo, ha descartado la anterior normativa. La misma otorga al juzgador la facultad para aquilatar la prueba del demandante y formular determinaciones de hechos según la credibilidad que le haya merecido la prueba presentada. Empero, se requiere que dicha facultad sea ejercitada después de un escrutinio severo y cuidadoso de la prueba, por lo que en casos de duda, es preferible que el demandado presente su caso. Colombani v. Gob. Municipal de Bayamón, 100 D.P.R. 120, 121-122 (1971); Morales Vda. de Zayas v. Pepsi Cola Bottling Co., 114 D.P.R. 772 (1983); Rosselló Cruz v. García, 116 D.P.R. 511 (1985); Romero Arroyo v. E.L.A., 139 D.P.R. 576 (1995). Véase además, Cuevas Segarra, José A. Op. Cit., págs. 647-649.
En el ámbito federal, la Regla 41(b) de las Reglas Federales de Procedimiento Civil permite al demandado solicitar la desestimación luego de la presentación de la prueba del demandante, cuando la misma resulta insuficiente para establecer la concesión de un remedio, la prueba resulta conflictiva o la misma presenta cuestiones atinentes a su credibilidad. Desde antaño, tres circuitos federales han declarado que en los casos sin jurado, el rol del juez, al adjudicar dicha moción, lo obliga a pasar juicio sobre los aspectos de la credibilidad y la evidencia conflictiva. De declarar con lugar dicha moción en sus méritos, el juez deberá formular determinaciones de hechos y de derecho. Esta posición fue posteriormente incorporada al texto de la Regla 41(b) mediante enmienda efectuada en el 1948. Así pues, la mayor contribución de dicha enmienda es que a tenor con la Regla 41(b) el juez, como juzgador de los hechos, viene llamado a aquilatar el peso de la *755 evidencia presentada por el demandante. Wright & Miller, Federal Practice and Procedure, Civil 2d § 2271, págs. 384-393 (1995).
Por último, debemos destacar que es norma reiterada en nuestro ordenamiento que el foro apelativo no intervendrá con las determinaciones de hechos o la apreciación de la prueba realizadas por el foro de instancia, salvo que exista pasión, prejuicio, error manifiesto o parcialidad, o que la apreciación de la prueba se aleje de la realidad fáctica, o ésta sea inherentemente imposible o increíble. S.L.G. v. Nationwide Insurance Co., 156 D.P.R._, 2002 J.T.S. 61; Belk v. Martínez, 146 D.P.R. 215, 232 (1998); Méndez v. Morales, 142 D.P.R. 26, 36 (1996); Oliveras, Inc. v. Universal Ins. Co., 141 D.P.R. 900, 927-928 (1996); Coop. Seguros Múltiples de P.R. v. Lugo, 136 D.P.R. 203, 208 (1994); Pueblo v. Maisonave Rodríguez, 129 D.P.R. 49, 63 (1991).
De este modo, el Tribunal Supremo de Puerto Rico se ha autoimpuesto y ordenado a todos los tribunales revisores que adopten la norma de la autolimitación. Esta consiste en que las determinaciones de hechos del tribunal de origen deberán ser respetadas y no podrán ser descartadas arbitrariamente, ni sustituidas por el criterio del tribunal apelativo, a menos que éstas carezcan de fundamento suficiente en la prueba presentada. Méndez v. Morales, supra; Pueblo v. Maisonave Rodríguez, supra, pág. 62. La autorestricción se fundamenta en que los foros recurridos están en una mejor posición para apreciar la prueba que los apelativos, ya que aquilatan la credibilidad de los testimonios, por razón de que pueden ver y escuchar los testigos mientras prestan testimonio. S.L.G. v. Nationwide Insurance Co., supra; Pueblo v. Maisonave Rodríguez, supra. A pesar de que esta función de los tribunales de primera instancia merece gran deferencia, ello no presupone que las determinaciones de hechos de dicho foro están exentas de error.
Cónsono con lo anterior, el Tribunal Supremo de Puerto Rico ha expresado que: “[U]na apreciación errónea de la prueba no tiene credenciales de inmunidad frente a la función revisora de este tribunal /Tribunal Supremo].” Méndez v. Morales, supra, pág. 36, citando de Rivera Pérez v. Cruz Corchado, 119 D.P.R. 8, 14 (1987). Así, aunque haya evidencia que sostenga las determinaciones de hechos del Tribunal de Primera Instancia, el foro apelativo intervendrá con las mismas, si de un análisis de la totalidad de la evidencia, éste se convence de que se ha cometido un error, por estar éstas en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la prueba presentada y admitida en evidencia. Méndez v. Morales, supra, pág. 36. Véase además, Oliveras, Inc. v. Universal Ins. Co., supra.
Ill
A la luz de la precedente normativa, debemos atender en primer lugar, si procesalmente erró el TPI al denegar la moción de desestimación presentada por el demandado, reservar su fallo hasta luego de oír el testimonio del demandado, y resolverla únicamente a base de la credibilidad que le mereció el testimonio de la demandante. Luego, determinaremos si el tribunal evaluó correcta y cabalmente la prueba desfilada, en particular la aportada por el patrono demandado. Por último, resolveremos si erró el TPI al alegadamente ignorar las estipulaciones sometidas por las partes. Concluimos que los errores primero y tercero no fueron cometidos; no así, el segundo. Por ello, procede revocar. Veamos porqué.
En el primer error, la apelante, en esencia, señala que la concesión de la moción de “non-suit” resultó errada como cuestión de derecho, toda vez que el TPI debió admitir toda la evidencia favorable a la parte demandante y declararla sin lugar, tal y como en los casos en que al menos existe una “scintilla” de evidencia que favorece al demandante. Concluimos que procesalmente no le asiste la razón a la apelante al así delimitar el alcance de la Regla 39.2 (c) de Procedimiento Civil.
Nuestro examen de la transcripción de los procedimientos, nos lleva a concluir que el TPI no denegó la moción de desestimación contra la prueba presentada en la vista en su fondo, y por tanto, la Minuta de 6 de septiembre de 2002 no refleja correctamente el proceder del tribunal respecto a la misma. Determinamos que fue la sentencia apelada la que expresamente dispuso de la moción de desestimación al declararla ha lugar.
*756 Una vez planteada la moción de “non-suit’, el TPI lejos, de denegarla, decidió reservar su fallo hasta después de escuchar el testimonio de la parte demandada. Ello es completamente consistente con el ordenamiento procesal vigente, debido a que la Regla 39.2(c) de Procedimiento Civil otorga gran flexibilidad al juzgador para resolver el caso con la prueba existente hasta ese momento o hacerlo posteriormente, contando con la prueba aportada por la parte demandada. -
Según surge del expediente, el TPI, en su discreción, estimó necesario escuchar el testimonio del demandado en relación con tres exhibits, en particular, el Exhibit Conjunto Núm. 1, o sea, la carta de 10 de mayo de 1994 suscrita por el Sr. Acevedo que provocó el alegado despido, con el propósito de aclarar lo acaecido a raíz de la misma. Transcripción, págs. 143-144.
Somos del criterio que las actuaciones del tribunal en cuanto a su proceder procesal, de ninguna manera pugnan con lo requerido por la Regla 39.2(c) y su doctrina vigente. Como dijéramos anteriormente, el elemento de la credibilidad resulta crucial para su adjudicación, por lo que no procede, como pretende la apelante, que apliquemos los criterios que anteriormente regían dicha Regla. Por lo tanto, estimamos que el primer error no se cometió y que el TPI actuó conforme a derecho al denegar inicialmente la desestimación por moción de non-suit y reservar su fallo hasta luego de oír el testimonio del demandado.
Ahora bien, la apelante plantea que no había completado el desfile de toda su prueba testifical cuando el TPI decidió bifurcar el caso atendiendo primeramente el aspecto de la responsabilidad dejando la fase de daños para más adelante. Respecto a la responsabilidad, el TPI escuchó únicamente el testimonio de la Sra. Caro sin permitir que el Sr. Antonio Caro Díaz prestara testimonio en esta etapa. Al así actuar, el TPI erró.
Si bien es cierto que la prueba testifical de la parte demandante en cuanto al aspecto de la responsabilidad y los alegados hechos de hostigamiento concluyó con el testimonio de la Sra. Caro, el TPI debió permitir el testimonio del Sr. Antonio Caro. Surge de la transcripción que hemos examinado que el abogado de la demandante, al enterarse de la bifurcación del caso, y refiriéndose al testimonio del Sr. Caro Díaz manifestó que tenía prueba "... específicamente producida por el compañero [Ledo. Luis A. Arroyo Santiago] de que el señor estuvo presente en el local y yo no quisiera cerrar las puertas diciendo que él no puede testificar aquí.” Transcripción, pág. 139, líneas 16 a 18. Además, se desprende del testimonio de la Sra. Caro que ésta le comunicó a su padre los actos de hostigamiento alegados por ella. Transcripción, pág. 32. De hecho, durante el testimonio de la Sra. Caro, ésta indicó que llevó a sus padres de visita al establecimiento, con la intención de que el demandado notara que ella tenía una “familia que [la] apoyaba” y que “había respeto”. Transcripción, págs. 95-97. Por lo tanto, concluimos que erró el tribunal al no permitir el testimonio del Sr. Antonio Caro Díaz, padre de la demandante, como prueba adicional sobre el aspecto de la alegada responsabilidad del patrono en este caso.
En su segundo señalamiento de error, la apelante imputa al TPI haber apreciado erróneamente la prueba, pues del testimonio del Sr. Acevedo no surge que éste haya negado la reclamación de la demandante por hostigamiento sexual. En particular, la Sra. Caro puntualiza que el Sr. Acevedo nunca negó los hechos sobre dicha causa de acción. Contrario a lo señalado por el TPI, el testimonio del Sr. Acevedo no se circunscribió a ciertas piezas de evidencia. Como cuestión de realidad, entre otros temas, el Sr. Acevedo abundó sobre los particulares de varios incidentes relativos a la alegada conducta de algunos compañeros de trabajo de la demandante sobre los cuales la Sra. Caro se había quejado. Estos hechos relatados por el propio Sr. Acevedo fueron estimados probados por el TPI en la sentencia apelada.
Según surge de la aludida sentencia, el TPI determinó como hecho probado que la Sra. Caro, en varias ocasiones, le comunicó al Sr. Acevedo incidentes, en los que este último tuvo que intervenir, con sus empleados como los descritos en las Determinaciones de Hechos Núm. 5, 6 y 7. Apéndice de la Apelante, pág. 24. Según la sentencia, la demandante se quejó de que el empleado Julio Robles la había tocado, pero el TPI concluyó que *757 esto fue un mal entendido. Examinada cuidadosamente la transcripción, encontramos que tal conclusión no se encuentra apoyada por la prueba. El testimonio del Sr. Acevedo relativo a este incidente particular, no menciona que el mismo hubiese sido un mal entendido entre el Sr. Robles y la Sra. Caro. Tampoco obra en la transcripción prueba de la cual el TPI pudo haber hecho tal inferencia. Transcripción, pág. 167-168.
Respecto a los empleados Heriberto Brillón y Angel Ruiz, el TPI en su sentencia enunció como hechos probados que la Sra. Caro se había quejado en cuanto al primero, de que éste “le había rozado el pantalón” cuando buscaba unos papeles en el área de la caja. Determinación de Hecho Núm. 6. En cuanto al segundo, ésta se quejó que “alprepararle un ‘sándwich’ a esta (sic) le había preguntado si quería el salami duro o blandito, por lo que ella se había sentido ofendida”. Determinación de Hecho Núm. 7, Apéndice de la Apelante, pág. 24, Sentencia, pág. 3.
De otra parte, la transcripción reflejó que el Sr. Acevedo le llamó la atención a los mencionados empleados, a raíz de las quejas presentadas por la Sra. Caro. Transcripción, pág. 172, líneas 9 a 12. Igualmente, surge de la transcripción que el Sr. Acevedo declaró que la Sra. Caro tomó los comentarios imputados al empleado Ruiz como una “fresquería”. Transcripción, pág. 186, líneas 5 a 9. De lo anterior se desprende que el Sr. Acevedo tenía conocimiento del aparente efecto negativo que produjo en la Sra. Caro el referido comentario.
Por otro lado, el Sr. Acevedo admitió que la Sra. Caro “era una muchacha seria en su trabajo” y que “no estaba en relajo ni en desorden con los empleados allí’. Transcripción, págs. 178 y 179. Con ello, confirmó la declaración que a tal efecto hizo la propia Sra. Caro con respecto a este hecho. Véase Transcripción, págs. 26 a 27.
De este modo, surge del testimonio del Sr. Acevedo que éste le dio cierto crédito a las quejas de la Sra. Caro, toda vez que tomó acción respecto a ellas, independientemente de que la misma haya sido adecuada o no, o de la intención o propósito del Sr. Acevedo al tomarla.
Tampoco podemos soslayar que la prueba demostró que al atender una de las reclamaciones de la Sra. Caro, el Sr. Acevedo no hiciera mucho caso porque éste no creía que era un crimen. Transcripción, pág. 184 y 185, líneas 16a21yl-3, respectivamente. Abona a lo anterior, el hecho de que el Sr. Acevedo admitió que no conocía las leyes de hostigamiento sexual y que no había en su negocio una política sobre el hostigamiento sexual. Transcripción, págs. 205 a 206. El Sr. Acevedo, claramente, aceptó que no conocía su obligación de mantener el centro de trabajo libre de hostigamiento sexual. Transcripción, pág. 206, líneas 4 a 7. También declaró que no conocía que su obligación como patrono incluia proveerle a los empleados un lugar libre de hostigamiento por parte de clientes o de suplidores. Transcripción, pág. 206, líneas 9 a 13. Asimismo, admitió que no conocía su obligación de que el ambiente de trabajo debía ser uno libre de ofensas, como de acercamientos de naturaleza sexual. Transcripción, pág. 210, líneas 12 a 17. Por último, las partes estipularon que la Sra. Caro era la única fémina empleada en el negocio durante los meses en que trabajó para el Sr. Acevedo (Apéndice de la Apelante, Estipulación número 4, pág. 13), y, según este último, no era una persona fea. Transcripción, pág. 190, líneas 5 a 8.
Aunque no podemos eludir que la parte demandada erosionó el testimonio de la demandante durante el contrainterrogatorio a que la Sra. Caro fue sometida, las áreas en que ésta fue objeto de impugnación no debilitaron o menoscabaron su causa de acción por hostigamiento sexual en el empleo. En efecto, su testimonio fue corroborado por el del Sr. Acevedo, quien nunca desmintió a la Sra. Caro con respecto a sus quejas sobre los alegados acercamientos por parte de otros varios empleados de éste.
El TPI concluyó que la demandante no pudo probar a satisfacción que hubiera sido objeto de hostigamiento sexual por el Sr. Acevedo. Apéndice de la Apelante, pág. 25. Esta conclusión se deduce del hecho de que el TPI no le dio crédito a las declaraciones de la Sra. Caro. Sin embargo, el TPI incidió al no darle consideración *758 alguna al testimonio del Sr. Acevedo, a quien sí le dio credibilidad, respecto al aparente ambiente hostil que permeaba en su establecimiento respecto a la demandante. Tal prueba debió haber sido analizada y evaluada por el tribunal a quo debido a que en la demanda se aduce la existencia de un presunto ambiente hostil en el lugar de trabajo de la Sra. Caro. Al desatender dicha prueba, el TPI erró.
Como se sabe, los reclamos de ambiente hostil en el empleo, modalidad del hostigamiento sexual, no requieren que su autor sea esencialmente el patrono. “Así pues, si un examen de la totalidad de las circunstancias, dentro de las cuales surge la reclamación, refleja que la conducta alegada —cuyo autor, valga recordar, puede ser cualquier empleado del patrono, el patrono mismo, sus agentes o supervisores — , en efecto constituye hostigamiento sexual, el patrono será responsable civilmente”. Arcadio Afanador Irizarry v. Roger Electric, supra, pág. 1023. (Enfasis nuestro.)
Ante este cuadro, el TPI erró al darle crédito a las declaraciones del Sr. Acevedo para los efectos de desestimar la causa de acción de la demanda sobre hostigamiento sexual sin advertir que del mismo testimonio de éste surgía prueba sobre la aparente existencia de hostigamiento sexual en su modalidad de ambiente hostil en el empleo, éste presuntamente creado por los empleados del Sr. Acevedo. Como es sabido, la causa de acción de hostigamiento sexual por ambiente hostil responsabiliza al patrono por el clima ofensivo y denigrante existente en el área de empleo, aun cuando el hostigamiento no haya sido llevado a cabo directamente por el patrono, mientras que el hostigamiento sexual equivalente (quid pro quo) requiere para su configuración que el autor tenga autoridad sobre el empleado.
En la demanda incoada por la Sra. Caro el 1ro de octubre de 1997, ésta alegó, entre otros, que el Sr. Acevedo “[mjantenía un ambiente hostil y ofensivo en su lugar de trabajo hacia ella”. Apéndice de la Apelante, pág. 2, Demanda, párrafo 7. También adujo que “[a] la demandante se le creó un ambiente hostil y/o se le condicionó su empleo a actos y avances sexuales”. Id., Demanda, párrafo 11.
Aun cuando podría argüirse que en su demanda la Sra. Caro no hizo alegaciones específicas sobre los hechos imputados a los empleados del Sr. Acevedo, a los fines de articular específicamente su causa de acción por hostigamiento sexual por ambiente hostil, lo cierto es que, al darle credibilidad al testimonio del Sr. Acevedo para los fines de desestimar la reclamación por el alegado hostigamiento sexual de éste hacia la demandante, el TPI no podía soslayar o descartar tal testimonio en la parte relativa a las quejas de la demandante sobre las actuaciones de los empleados Robles, Ruiz y Brillón, quejas que por su propio testimonio, el Sr. Acevedo investigó. Concluimos que el TPI debió considerar dicha prueba “a todos los efectos como si se hubieran suscitado en las alegaciones”. Por ende, erró al no considerar la posible existencia de una causa de acción por hostigamiento sexual en su modalidad de ambiente hostil creado por los empleados del Sr. Acevedo, según surge de la evidencia admitida.
Somos del criterio que la evidencia anunciada por ambas partes en este caso ameritaba ser presentada en su totalidad para que el TPI pudiera resolver adecuadamente las alegaciones de la demanda la cual toca derechos de incuestionable valía. Como muy bien lo articuló el Tribunal Supremo de Puerto Rico:
“[L]a prohibición contra el hostigamiento sexual en el empleo es una cuestión que responde a política pública de raigambre constitucional y debe ser examinada rigurosamente por los tribunales. Así, su fiel adjudicación requiere un análisis detenido y cuidadoso de los hechos, pues están involucrados factores humanos relativos a actitudes, conductas, móviles, sentimientos y otros, que difícilmente pueden precisarse a menos que se ventile en un juicio plenario”. Rodríguez Meléndez v. Supermecado Amigo, Inc., supra, pág. 135. (Enfasis en el original.) (Enfasis nuestro.)
Resolvemos que, aun cuando el TPI tenía la facultad de aquilatar la prueba según la credibilidad que ésta le hubiese merecido, no podía descartar evidencia presentada, no controvertida, capaz de crear duda en una mente *759 razonable sobre la existencia de una causa de acción, y que ameritaba ser ponderada con toda la evidencia propuesta y no presentada. Al así hacerlo, incidió el TPI. Advertimos de la firme política judicial de que todo caso debe ventilarse en los méritos, prefiriéndose en lo posible la dilucidación de los casos en su fondo, con ánimo de hallar la verdad y hacer debida justicia. Rivera et al. v. Superior Pkg., Inc. et al., 132 D.P.R. 115 (1992); Mercado v. Panthers Military Soc. Inc., 125 D.P.R. 98 (1990); Echevarría Jiménez v. Sucn. Pérez Meri, 123 D.P.R. 664 (1989); Maldonado v. Srio. de Recursos Naturales, 113 D.P.R. 494, 498 (1982). Se cometió el segundo error señalado por la apelante.
En su último error, la apelante sostiene que el TPI incidió al ignorar las estipulaciones hechas por las partes. Concluimos que dicho error resulta improcedente. De los autos, y en particular, del Informe de Conferencia con Antelación al Juicio, surge que sólo hubo cinco estipulaciones entre las partes. El resto de las estipulaciones presentadas fueron unilaterales de cada una de las partes, es decir, no fueron avaladas por ambas partes, por lo que quedaron en controversia. En cuanto a las estipulaciones relativas al contenido de las tarjetas de ponchar, surge particularmente del expediente que la apelante nunca hizo las gestiones necesarias para presentar conjuntamente con la otra parte una estipulación al respecto, recibiendo sanciones en corte abierta por ello. Transcripción, págs. 5 a 9. En fin, las estipulaciones de las partes sólo tuvieron el efecto de reducir la controversia de manera superficial. No se cometió el tercer error imputado.
IV
Por los fundamentos expuestos, se deja sin efecto la desestimación de la demanda según ordenada en la sentencia emitida el 3 de julio de 2002 y archivada en autos el 16 de julio de 2002. En consecuencia, se permite a ambas partes presentar los testimonios de todos los testigos anunciados en el Informe de Conferencia con Antelación al Juicio presentado el 4 de enero de 2000, a los fines de que se dilucide tanto la causa de acción de la demandante por hostigamiento sexual del patrono como la de hostigamiento sexual por ambiente hostil en el empleo.
Lo acordó y manda el Tribunal y lo certifica la Secretaria General.
Aida Ueana Oquendo Graulau
Secretaria General
ESCOLIOS 2004 DTA 14
í. Regla 39.2(c) de Procedimiento Civü.
2. De las alegaciones de la demanda, Acevedo únicamente admitió ser el propietario de H.R. Food Liquor Market en el Condado, Puerto Rico. Además, aceptó que el 3 de enero de 1994’, la demandante empezó a trabajar como cajera en dicho negocio, devengando un sueldo de $4.25 por hora.
3. El 17 de mayo de 1994, la Sra. Caro declaró por escrito ante la Unidad Antidiscrimen lo siguiente: “El 3 de enero de 1994 comencé a trabajar como cajera. Durante mi empleo fui víctima de hostigamiento sexual por parte del dueño, Sr. Rubén Acevedo. El Sr. Acevedo me hacía acercamientos, comentarios e insinuaciones de índole sexual. Debido a que rechacé sus acercamientos, fui despedida alegando tardanzas. Solicito se me paguen los salarios dejados de percibir y que se me compense por mis daños, sufrimientos, y angustias mentales. Además, cualquier otro beneficio a que por ley tenga derecho.” Autos Originales, Exhibit Conjunto Núm. 2 de la vista en su fondo.
4. Caso sobre Reclamación de Salarios, Núm. 97-12006, ante el Tribunal de Primera Instancia, Sub-Sección de Distrito de San Juan, titulado César J. Almodóvar Marchany, Secretario del Trabajo v. Rubén Acevedo h/n/c HR Food and Liquor Market.
5. El Informe contiene 23 estipulaciones adicionales que no fueron aceptadas por la parte demandada.
*760 6. El reclamo de horas extra fue transigido en el caso Núm. 97-12006. Véase nota 4, ante.
7. Debido al resultado a que llegó el TPI, dichos testimonios no fueron escuchados en la vista en su fondo.
8. Autos Originales, Informe de Conferencia con Antelación al Juicio, págs. 7 y 8.
9. Como fundamento para admitir la estipulación presentada por la parte demandada, el TPI adujo que la misma era más específica, completa y contenía un desglose de los períodos de pago, especificando tanto la hora de entrada como la hora de la salida de la demandante. Dicha estipulación formó parte del Exhibit núm. 3 del demandado. Transcripción, pág. 147.
10. Aunque la sentencia dice Exh. 3 de la demandante, lo cierto es que de la prueba documental no surge la existencia de tal exhibit de la parte demandante. En efecto, sólo hubo prueba documental conjunta y de la parte demandada. Véase listado de dicha prueba en la Minuta del 6 de septiembre de 2000 incluida en los Autos Originales.
11. El tribunal dictaminó que:
“El Tribunal se reafirma en la determinación de esta mañana, que le interesaría escuchar el testimonio del Sr. Rubén Acevedo, toda vez que de las cuatro piezas de evidencia documental que han sido sometidas bajo las Reglas de Evidencia en este caso, dos de ellas tienen que ver con el Sr. Rubén Acevedo. Una es... eh... la carta que... a raíz de ella suscitó la... de alguna manera, obviamente, la separación de empleo de la Sra. Liana Caro y la otra aparece mencionando su nombre en la querella de la Unidad Antidiscrimen a fin de tener el récord claro y tener el beneficio de su testimonio... En ese sentido, como se estaría sentando a declarar, obviamente queda ya denegada la moción al amparo de la Regla 39.2. No impide ello que se reformule, como bien dispone la regla, una vez queda aclarada eh... las dudas que en este momento, pues tiene ante sí el Tribunal”. Transcripción, pág. 155.
12. Dicha carta, que forma parte del Exhibit Conjunto Núm. 1, reza como sigue:

“To Liana Caro: I am warning Liana Caro constantly about her lateness. Almost every day she is walking in five minutes late. If this continues, I will have to suspend her for [a] week and if it continues, then I'll have to laid [sic ] her off. Rubén Acevedo. ”

13. Autos Originales, Minuta del 6 de septiembre de 2000. El último párrafo de ésta señala que: “El Ledo. Arroyo Santiago [abogado del demandado] se reiteró nuevamente en su solicitud de desestimación y procedió a argumentar la misma. Dicha solicitud fue denegada por el Tribunal, por lo que procedió a presentar prueba testifical en cuanto al aspecto de la responsabilidad consistente en el testimonio del señor Acevedo quien fue debidamente juramentado. ” (Enfasis nuestro.) La página dos de la sentencia recurrida, en cambio, no expresa que el TPI hubiera denegado la moción en corte abierta el día de la vista. Apéndice del Apelante, pág. 23.
14. La Ley 100 carece de definición de justa causa, por lo que tradicionalmente los tribunales se remiten a la definición provista en la Ley 80 de 30 de mayo de 1976, 29 L.P.R.A. sec. 185 et seq.
15. Young v. U.S., 111 F2d 823 (9th Cir., 1940); Gary Theatre Co. v. Columbia Pictures Corporation, 120 F2d 891 (7th Cir, 1941); Bach v. Friden Calculating Machine Co., Inc., 148 F2d 407 (6th Cir., 1945).
16. Véase notas del Comité de Consulta a la enmienda de 1948 de la Regla 41(b) de Procedimiento Civil Federal, (Advisory Committee Note to Rule 41(b). La Regla enmendada reza: “After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as the trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all evidence. ”
17. Véase ante, pág. 24.
18. El Sr. Acevedo expresó particularmente: “Ella lo ... lo cogió como una fresquería, ella. Yo no. Ella.” Transcripción, pág. 186.
*761 19. Este testimonio surge de la presentación al testigo Acevedo de una porción de su deposición, por el abogado dp la apelante, la cual fue leída por el abogado del demandado en vista de la alegada dificultad del Sr. Acevedo en leer en español. Lo vertido de la deposición fue lo-siguiente: “ta bien. Pa’mi yo no hice mucho caso porque yo no creo que fue un ... un crimen y cuando ella me lo dijo, yo dije, déjamelo mencionárselo a Trillón (sic) pa’ que no suceda otra vez. ‘So’ yo ‘vengo’, mira Heriberto, Liana me dijo que tú le tocaste el tobillo (no se entiende) y tu sabes. El dijo, bueno, pero tuve que doblarme y yo pedí, tu sabe, perdón. Pero yo no sabía que se iba a molestar tanto ella. ‘So’ yo dije, vamos a hacer algo, cuando tu vayas a buscar algo ahí pídele, tu sabe, con permiso. Pa’ que ella se mueva pa’ tras y tu no tienes que tocarle el tobillo otra vez y en eso tu sabe, le llamé la atención. ”
20. Específicamente, el Sr. Acevedo manifestó refiriéndose a la Sra. Caro “Bueno... no digo que es fea... ”.
21. La transcripción reflejó que la Sra. Caro fue inconsistente en su declaración con respecto al alegado hostigamiento ocurrido en sus posteriores trabajos. Transcripción, págs. 58 y 86. Además testificó que en una solicitud de empleo había indicado fechas inexactas en cuanto a los trabajos anteriores. Transcripción, págs. 66-71. La demandante admitió también haber guardado silencio en dicha solicitud sobre trabajos previos. Transcripción, pág. 80.
22. Véase la Regla 13.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III, la cual dispone:

“Cuando con el consentimiento expreso o implícito de las partes se sometan a juicio cuestiones no suscitadas en las alegaciones, aquéllas se considerarán a todos los efectos como si se hubieran suscitado en las alegaciones. La enmienda de las alegaciones que fuere necesaria para conformarlas a la evidencia a los efectos de que las alegaciones reflejen las cuestiones suscitadas, podrá hacerse a moción de cualquiera de las partes en cualquier momento, aun después de dictarse sentencia; pero la omisión de enmendar no afectará el resultado del juicio en relación con tales cuestiones. Si se objetare la evidencia en el juicio por el fundamento de ser ajena a las cuestiones suscitadas en las alegaciones, el tribunal podrá permitir las enmiendas y deberá hacerlo liberalmente, siempre que con ello se facilite la presentación del caso y la parte que se oponga no demuestre a satisfacción del tribunal que la admisión de tal prueba perjudicaría su reclamación o defensa. El tribunal podrá conceder una suspensión para permitir a la parte opositora controvertir dicha prueba.

En todo caso en que hubiere alguna parte en rebeldía por falta de comparecencia, se estará a lo dispuesto en las Reglas 43.6y 67.1.’’

23. Estas son: (1) El demandado era dueño del establecimiento en la fecha de los alegados hechos de hostigamiento (enero a 10 de mayo de 1994); (2) La demandante era cajera devengando $4.25 la hora durante enero a 10 de mayo de 1994; (3) La demandante ponchaba su hora de entrada y salida del trabajo; (4) La demandante era la única fémina en el establecimiento; (5) El demandado era su supervisor, así como de los demás empleados del negocio.